



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **KACI JOHNSON,** | ) | |
| Employee, | ) | **Docket No. 2020-08-0731** |
| **v.** | ) | |
| | ) | |
| **INSPIRE BRANDS d/b/a** | ) | **State File No. 92273-2016** |
| **BLAZIN WINGS, INC**., | ) | |
| Employer, | ) | |
| **And** | ) | **Judge Allen Phillips** |
| **ACE AMER. INS. CO.,** | ) | |
| Carrier. | ) | |

---

### EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

The Court held an Expedited Hearing on May 13, 2022, where Ms. Johnson requested an order that Inspire pay for a back surgery and attorney's fees for wrongful denial of the surgery. Inspire countered that Ms. Johnson's back condition was not causally related to her work injury. After consideration of the evidence, the Court holds Ms. Johnson would likely prevail at trial regarding the surgery request, but at this time declines to award attorney's fees.

### History of Claim

On April 4, 2020, Ms. Johnson's co-employees were moving a cooler when it fell on the left side of Ms. Johnson's back, pinning her against a counter. Ms. Johnson introduced evidence that the cooler weighed more than 300 pounds when empty, but on the day of the incident, it was stocked with beer. She produced a video of the incident taken from a security camera.

After the incident, Ms. Johnson went to an emergency room, where the provider obtained a CT scan of Ms. Johnson's chest and x-rays of her pelvis. Both studies were normal, and the provider diagnosed a rib contusion. Two days later, Ms. Johnson saw her own chiropractor, Dr. Chanceller Johnson, who did not record the incident but said only

1

that Ms. Johnson was "sore but feeling a little better today." He included that Ms. Johnson complained of pain at the "L5" level of her spine and he manipulated that level and several others. Ms. Johnson then saw her primary care doctor, and afterwards, Inspire offered a panel of physicians.

Ms. Johnson chose MedPost Urgent Care, where a practitioner recorded that Ms. Johnson's pain radiated into her left buttock. The practitioner took Ms. Johnson off work for a week and then referred her to an orthopedic specialist. Inspire gave a panel of orthopedic specialists, from which Ms. Johnson chose Dr. Jeffrey Dlabach. He recorded that Ms. Johnson's pain radiated down her left leg. He obtained an MRI of her lumbar spine that showed a left L5-S1 paracentral disc herniation and recommended epidural steroid injections. When those did not help, he referred Ms. Johnson to a neurosurgeon.

Inspire offered a panel of neurosurgeons, from which Ms. Johnson chose Dr. Fereidoon Parsioon. Ms. Johnson saw Dr. Parsioon in August 2020 and described the cooler incident, including showing him the video. At that time, Ms. Johnson complained of pain in her low back and left leg. Dr. Parsioon reviewed the report of the MRI obtained by Dr. Dlabach and asked Ms. Johnson to get a copy of the actual films. Dr. Parsioon diagnosed low-back and left-leg pain and took Ms. Johnson off work.

Ms. Johnson obtained the MRI films, and Dr Parsioon agreed they showed an L5-S1 herniated disc. By October 22, 2020, he believed Ms. Johnson had exhausted all conservative treatment and recommended she undergo the surgery at issue, an L5-S1 partial hemilaminectomy and microdiscectomy. He reiterated that recommendation one week later.

On November 4, Inspire presented Dr. Parsioon with information that Ms. Johnson had helped decorate for a wedding (without further detail), and asked if that activity may have been a "new injury." Dr. Parsioon said it would not be a new injury because Ms. Johnson neither fell nor lifted a "significantly heavy object." Instead, he said the cooler incident contributed "more than 50% to [Ms. Johnson's] current condition."

Inspire also requested utilization review of the recommended surgery, and the reviewing physician said it was not medically necessary. Basing his decision only on Dr. Parsioon's October 22 note, the UR physician said Dr. Parsioon neither documented his physical examination nor any "significant objective findings" in support of the surgery. Ms. Johnson appealed that decision to the Bureau's medical director, who upheld the denial on grounds of an "incomplete evaluation." Because of the denial, Dr. Parsioon stated in December that he would perform the surgery under Ms. Johnson's private insurance because of her "severe pain."

Ms. Johnson filed a request for expedited hearing in February 2021, asking that Inspire pay for the surgery. In the supporting affidavit, she noted her treatment history

2

and said that she continued to receive temporary total disability benefits. However, she withdrew that request in March 2021, after Inspire agreed to pay for the surgery.

But rather than paying for the surgery, Inspire then arranged an evaluation by orthopedic surgeon Dr. Samuel Murrell to further address medical necessity.[1] In late March, Dr. Murrell stated his "opinion that [Ms. Johnson] did sustain an injury on 4/4/2020," that she had exhausted all non-surgical options, and he agreed with Dr. Parsioon's surgical recommendation.

After Dr. Murrell's evaluation, the parties learned Dr. Parsioon was no longer performing surgery. So, Inspire offered Ms. Johnson a panel of physicians, including Dr. Murrell, to replace Dr. Parsioon. Ms. Johnson chose Dr. Murrell and first saw him as her treating physician in June. Dr. Murrell recommended another MRI, and it was interpreted as showing both the herniated disc and degenerative changes. After reviewing the MRI findings, Dr. Murrell repeated that Ms. Johnson needed surgery.

Then, Inspire discovered that Ms. Johnson had sought chiropractic treatment before the cooler incident. Specifically, it obtained records from Dr. Johnson and from Arlington Family Chiropractic.

The records from Arlington documented that Ms. Johnson complained of low-back pain in October 2017. She also complained of pain in all other levels of her spine, and the provider diagnosed segmental dysfunction at multiple levels. He treated her with traction, electrical stimulation, and manipulation at multiple spinal levels during two visits.

The records from Dr. Johnson revealed he first saw Ms. Johnson in March 2018. Like the provider at Arlington, he too diagnosed segmental dysfunction at multiple levels including the lumbar segment, noting particularly the L5 level. He manipulated Ms. Johnson's spine at the cervical, thoracic, and lumbar levels and continued doing so at nine later visits through February 2020. At each of the visits, he noted her complaints of pain at multiple levels of her spine, including the low back, and he diagnosed segmental dysfunction. He added that he observed "continued progress" at each visit.

Dr. Johnson saw Ms. Johnson again on April 2, 2020, two days before the incident. On that day, she complained that her *right* hip and *right* lower back were "sore." Dr. Johnson again noted decreased motion at the L5 level, as well as several other "segments." He again noted "continued progress," and he manipulated her spine at multiple levels. He saw her again on April 6, as noted above, and continued to see her through June 2021, for a total of twelve more visits, each time noting continued complaints of back pain, segmental dysfunction, and continued progress from the

---

[1] The record is silent as to why Inspire obtained the evaluation at that time.

previous visit. The notes do not mention the cooler incident anywhere.

Inspire then presented the chiropractic records to Dr. Murrell and asked him a series of questions. Specifically, as relevant here, it asked if he could say, to a reasonable degree of medical certainty, that the herniated disc or the recommended surgery was more than fifty percent related to the incident when considering the chiropractic records. Dr. Murrell answered "NO" to both questions. (Emphasis in original).

Based on Dr. Murrell's answers, Inspire refused to pay for the surgery, and Ms. Johnson requested another Expedited Hearing. But before agreeing to set the hearing, the parties wanted to obtain medical proof.

Ms. Johnson deposed Dr. Parsioon, a neurosurgeon with twenty-eight years of experience. He testified the chiropractic records in no way changed his causation opinion. He said that, in his experience, chiropractors always make certain diagnoses including "segmentation problems" and that he frankly does not "care about anything they said." Further, he noted the absence of any documentation of leg pain in the chiropractic records. He testified that even if the chiropractors took x-rays, the x-rays cannot show a disc herniation, and he noted the chiropractors made no referral to a surgeon for evaluation. In short, he thought the chiropractic records were "totally irrelevant."

Dr. Parsioon viewed the video of the incident during his deposition, noting Ms. Johnson had previously shown it to him. He said it did not matter to him whether the cooler knocked Ms. Johnson to the ground. Instead, he described the incident as, "you can't have a better traumatic injury than that for a ruptured disc in the spine." Thus, he confirmed his opinion that Ms. Johnson's injury was greater than fifty-one percent related to the cooler incident. He said he is again performing surgery and is willing to perform this surgery.

On cross-examination, Inspire attempted to impeach Dr. Parsioon by confronting him about his negative opinions of chiropractors. He stood by his assertions, noting the absence of notations of leg pain in the chiropractic records and by reminding they made no referral for further evaluation of a disc herniation.

Ms. Johnson also deposed Dr. Murrell, an orthopedic surgeon with over twenty years of experience. Dr. Murrell testified Ms. Johnson had degenerative changes in her spine when he first saw her, but she also had a disc protrusion "on top of that." He additionally testified the second MRI showed basically the same findings as the first. He confirmed his initial opinion that Ms. Johnson had an injury on April 4, and he then agreed with Dr. Parsioon that she needed surgery.

However, Dr. Murrell testified he changed his opinion after viewing the chiropractic records. He reiterated what he wrote in response to Inspire's questions and

4

further testified that the chiropractors were treating Ms. Johnson for back pain at the same level of her spine allegedly injured, L5, before April 4. Because of that treatment, Dr. Murrell said he now could attribute no more than fifty percent of the cause to the work incident.

Dr. Murrell reviewed a letter from Dr. Johnson addressed "To Whom It May Concern," in which he said that he had treated Ms. Johnson for "segmental dysfunction" since 2018. However, after the incident, she complained of increased pain and had more swelling. Dr. Murrell said that letter did not change his opinion as it confirmed Ms. Johnson hurt both before and after the incident, even if the pain worsened afterwards.

Dr. Murrell also testified he understood Ms. Johnson to say that the cooler knocked her to the floor and landed on top of her. Thus, his review of the video led him to believe that the trauma was less serious than she described and that the counter seemingly broke the fall of the cooler. However, he conceded that Ms. Johnson was working before the incident but now could not, and that she now had leg pain, while she did not before.

Dr. Murrell concluded that, "the waters are sort of muddy," and "it will ultimately be up to the workers' compensation judge to decide whether this gets addressed." He said that he "wish[ed] I could help him or her, but I can't, and he's going to need to decide."

At the hearing, Ms. Johnson attributed her current symptoms to the incident. She said the chiropractic treatment was for routine aches and pains, as opposed to the disabling pain that now limits all her activities. She pointed to problems lifting her young son and playing with him. She also testified she was able to work until the incident but now cannot, and she continues to receive temporary total disability benefits. She expressed the difficulties in providing for herself and her son as a single mother given the loss of wages.

Ms. Johnson remains willing to undergo the surgery and wants Dr. Parsioon to perform it. She argued he adequately explained the lack of significance of the chiropractic treatment and that his causation opinion was correct. She further argued Dr. Murrell was not credible, as he changed his favorable opinion from the first visit and then vacillated in his deposition. She also argued Inspire consistently tried to find ways to deny her request after agreeing to the surgery and for that reason requested fees for wrongful denial.

For its part, Inspire argued that Ms. Johnson was less than credible, going as far to call her a "liar" because she claimed no previous problems, when she had in fact seen the chiropractors. In its brief, Inspire argued the claim was essentially "insurance fraud."

To impeach her, Inspire confronted Ms. Johnson with social media posts showing

5

her socializing at the wedding event referenced in its questions to Dr. Parsioon and with pictures of her on outings to the Memphis Zoo and a water park. It offered a Tik Tok video in which Ms. Johnson parodied the incident and showed her a picture of her lifting her son despite saying she could not. The latter picture contained a post from Ms. Johnson that she "didn't love the horrible back pain that followed" lifting her child.

As to the expert proof, Inspire argued that the Court should discount Dr. Parsioon's opinions because of his obvious bias against chiropractors. It said he would not soften his stance, despite cross-examination to the effect that he was not sure exactly which treatment they provided Ms. Johnson or whether it might have related to her current complaints. Inspire contended his bias prevented Dr. Parsioon from acknowledging that Ms. Johnson received treatment at the L5 level she claimed is injured and that he cannot properly relate her condition to the incident while ignoring the chiropractic records. Those records, according to Inspire, show Ms. Johnson may already had the herniation.

Inspire also argued that Dr. Murrell's opinion was presumed correct under Tennessee Code Annotated section 50-6-102(14)(E) (2021) because he became the only authorized treating physician once Dr. Parsioon ceased treatment. It further argued that Dr. Murrell said Ms. Johnson's herniated disc was not greater than fifty percent related to the incident based on his review of the chiropractic records. Finally, Dr. Murrell was in a better position to address causation, because he had the advantage of the second MRI showing degenerative changes, while Dr. Parsioon did not.

Because of the purported credibility problems and the existence of the chiropractic records, Inspire contended Ms. Johnson did not show a greater than fifty-percent relation between the incident and her injury. It asked that the Court deny her requests.[2]

**Findings of Fact and Conclusions of Law**

At this Expedited Hearing, Ms. Johnson must show she would likely prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1).

*Back surgery*

To prevail on her surgery request, Ms. Johnson must prove that her injury arose primarily out of her employment at Inspire, which means, to a reasonable degree of medical certainty, that the cooler incident contributed more than fifty percent to her injury when considering all causes. "Shown to a reasonable degree of medical certainty" means that the incident is more likely than not the cause. Tenn. Code Ann. § 50-6-

---

[2] Inspire did not argue against medical necessity of the surgery, as both Drs. Parsioon and Murrell said she needs it.

102(14)(C)-(D).

Regarding causation, the parties offered competing expert opinions. In determining which to accept, the Court can consider, among other things, the qualifications of the experts, the circumstances of their examination, the information available to them, and an evaluation of the importance attached to the information by other experts. *Bass v. The Home Depot U.S.A., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017). Additionally, the Court must presume the opinion of an authorized treating physician is correct, subject to rebuttal by a preponderance of the evidence. Tenn. Code Ann. § 50-6-102(14)(E).

As to the expert's qualifications, Ms. Johnson relied upon Dr. Parsioon, a neurosurgeon with twenty-eight years' experience, who performs spinal surgery. Inspire relied on Dr. Murrell, an orthopedic surgeon with over twenty years' experience, who also performs spinal surgery. The Court finds the physicians' qualifications equal.

As to circumstances of their evaluations, the Court finds both Drs. Parsioon and Murrell were chosen by Ms. Johnson from panels and both of their causation opinions are presumed correct. The Court rejects Inspire's argument that Dr. Parsioon's opinion lost its presumption when Dr. Murrell began treatment. Rather, the Appeals Board held in *Endsley v. Benchmark Contractors, LLC*, 2017 TN Wrk. Comp. App. Bd. LEXIS 47, at *6-7 (Aug. 11, 2017), that the presumption of correctness under section 102(14)(E) applies to the opinion of "*a* physician" selected from a panel, not only to the opinion of the current treating physician.

Turning to the specific circumstances of their evaluations, Dr. Parsioon saw Ms. Johnson on more occasions than Dr. Murrell. "It seems reasonable that the physicians having greater contact with [an employee] would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Bass*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *14. Likewise, Dr. Parsioon saw Ms. Johnson sooner after the incident, allowing him to assess her complaints shortly afterwards and consider their relation to the incident. Dr. Parsioon is also a neurosurgeon, the specialty to which Dr. Dlabach made the initial referral. Taken in totality, the Court finds the circumstances of the evaluations support Dr. Parsioon.

Regarding the information available to them, both physicians examined Ms. Johnson multiple times, both had access to the first MRI, and both were presented the records of the earlier chiropractic treatment. Inspire argued Dr. Parsioon did not review the second MRI recommended by Dr. Murrell, thus depriving him of knowledge of degenerative changes shown on the second study. But Dr. Murrell testified the second MRI showed basically the same anatomic conditions.

Further, Inspire asserted that Dr. Parsioon provided his initial causation opinion

without benefit of the chiropractic records. However, when deposed, Dr. Parsioon explained in detail his position regarding the relevance of those records. Moreover, Dr. Parsioon was very succinct in his assertion that, "you can't have a better traumatic injury than [the cooler incident] for a ruptured disc in the spine."

Finally, and most relevant here, the Court evaluates the importance each expert attached to the information. Again, though Inspire attaches great weight to the chiropractic records, Dr. Parsioon explained that the chiropractic records in no way suggested the presence of a herniated disc, and he also noted the consistent findings and similarity of treatment by the chiropractors over time.

The Court finds the records contain the type of notations Dr. Parsioon said he would expect from a chiropractor, and further finds those notes support his conclusion that the treatment was typical of that provided by chiropractors. Namely, at each visit Dr. Johnson documented what he called Ms. Johnson's continued progress from the last visit, used the same manipulative technique at multiple levels of her spine, and said that Ms. Johnson had dysfunction of various segments of her spine.

As to Inspire's argument that the disc herniation may have preexisted the incident, the Court finds nothing in the chiropractic records to suggest that she did. The records make no mention of a possible herniation, and neither chiropractor referred her for evaluation of a disc injury. The treatment by Arlington occurred in 2017, over three and one-half years before the incident at issue. Moreover, Ms. Johnson credibly explained that she sought chiropractic treatment for less severe pain than she now feels. The records are consistent with that explanation, and Dr. Johnson said the same in his letter after the injury, noting specifically that he found changes for the worse after the cooler incident.

Thus, the Court accredits Dr. Parsioon's favorable causation opinion when considering the importance that the experts attached to the available information.

Apart from the expert proof, the Court carefully watched Ms. Johnson testify and thoroughly reviewed the photographic evidence regarding her post-injury activities. The photographs and videos suggest Ms. Johnson was physically able to travel, walk and participate in social activities. In one she was depicted lifting her young son but added in the social media post that it hurt her back, just as she described at the hearing.

However, regardless of this photographic evidence, the Court focuses on the salient issue: what caused Ms. Johnson's need for surgery? Which activities she can or cannot do is relevant but not controlling as to causation. Rather, the Court rejects Inspire's castigation of Ms. Johnson's credibility. She admitted that the photos accurately depicted her social activities, but she still felt pain both when doing them and afterwards. But most importantly, she testified credibly that the disabling symptoms were related to the cooler incident. On that point, which *is* controlling, she was very self-assured, steady,

and confident. *Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility).

Finally, Tennessee law has long held that medical proof is not to be "read and evaluated in a vacuum," but, instead "must be considered in conjunction with the lay testimony of the employee as to how the injury occurred and the employee's subsequent condition." *Thomas v. Aetna Life & Cas. Co.*, 812 S.W.2d 278, 283 (Tenn. 1991). The Court believes Ms. Johnson when she said her symptoms are related to the cooler incident, and the Court agrees with Dr. Parsioon's assessment that the incident exemplifies the appearance of a traumatic injury.[3]

*Attorney's fees*

Ms. Johnson asked for attorney's fees for wrongful denial under Tennessee Code Annotated section 50-6-226(d)(1)(B).

At this interlocutory stage, the Court may award fees for wrongful denial only in "extremely limited circumstances" because of the "relaxed standard at expedited hearings" and "the fact that discovery and medical proof are often incomplete[.]" *Thompson v. Comcast Corp.*, 2018 TN Wrk. Comp. App. Bd. LEXIS 1, at *28-29 (Jan. 30, 2018). Thus, the Court declines to award fees at this time and reserves the issue for future consideration.

**IT IS, THEREFORE, ORDERED** as follows:

1. Inspire shall authorize and pay for the back surgery recommended by Dr. Parsioon, whom the Court designates as the treating physician.

2. The Court denies Ms. Johnson's request for attorney's fees for wrongful denial under Tennessee Code Annotated section 50-6-226(d)(1)(B) at this time.

3. The Court sets a Status Hearing on **Monday, July 25, 2022, at 9:30 a.m. Central Time**. The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the hearing.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Employer must submit confirmation of compliance with this Order to the

---

[3] This statement should in no way be construed that the Court considers the incident so obvious that it does not require medical proof. Rather, the Court bases its findings on Ms. Johnson's testimony in conjunction with Dr. Parsioon's assessment of the video evidence.

Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED May 24, 2022.**

_Allen Phillips_
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits
1. Deposition of Dr. Fereidoon Parsioon
2. Deposition of Dr. Samuel Murrell
3. Collective Medical Records
4. First Report of Work Injury
5. Choice of Physician Form (C-42)-Dr. Parsioon
6. Choice of Physician Form (C-42)-Dr. Murrell
7. Specifications of cooler
8. Video recording of incident
9. Tik Tok video of incident
10. Photo of employee at zoo
11. Photo of employee at water park
12. Photo of employee at wedding
13. Photo of employee holding dog
14. Photo of employee holding dog
15. Photo of employee lifting her child

Technical Record
1. Petition for Benefit Determination (7/22/20)
2. Dispute Resolution Statement (10/19/20)
3. Petition for Benefit Determination (11/23/20)
4. Dispute Certification Notice with attachments regarding additional issues
5. Request for Expedited Hearing (2/11/21)
6. Correspondence to Court from employee regarding surgery approval
7. Second Request for Expedited Hearing

8. Order Setting Expedited Hearing
9. Motion for Continuance of Expedited Hearing
10. Order Continuing Expedited Hearing
11. Order Setting Expedited Hearing
12. Motion to Exceed Page Limit for Briefs
13. Order Granting Motion to Exceed Page Limits
14. Employee's Expedited Hearing Brief
15. Employer's Witness and Exhibit List
16. Employer's Pre-Hearing Statement

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on May 24, 2022.

| Name | Email | Service sent to: |
|---|---|---|
| Monica R. Rejaei, Employee's Attorney | X | mrejaei@nstlaw.com atarbania@nstlaw.com |
| Allen Grant and Ben Norris, Employer's Attorneys | X | agrant@eraclides.com bnorris@eraclides.com |

*Penny Shrum*

**Penny Shrum, Court Clerk**
wc.courtclerk@tn.gov



<u>Expedited Hearing Order Right to Appeal</u>:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board. To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence. The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement. All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____    ☐ Motion Order filed on _____

☐ Compensation Order filed on_____    ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.


_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived.  The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental $ _____ per month

| | | |
|---|---|---|
| Groceries | $ _____ per month | Telephone $ _____ per month |
| Electricity | $ _____ per month | School Supplies $ _____ per month |
| Water | $ _____ per month | Clothing $ _____ per month |
| Gas | $ _____ per month | Child Care $ _____ per month |
| Transportation | $ _____ per month | Child Support $ _____ per month |
| Car | $ _____ per month | |
| Other | $ _____ per month (describe: _____ ) | |

10. Assets:

Automobile    $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____    (FMV) _____

Other    $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____

NOTARY PUBLIC

My Commission Expires:_____